## PARTNERSHIP—FRAUDULENT CONVEYANCE—MORT= GAGE—INSOLVENCY.

[Hamilton (1st) Circuit Court, January 14, 1904.]

Giffen, Jelke and Swing, JJ.

W. A. GOODMAN, JR., ET AL. V. JOSEPH RAWSON ET AL.

1. MORTGAGE OF·PARTNER ON INDIVIDUAL PROPERTY TO SECURE FIRM NOTES HELD TO BE AN ASSIGNMENT IN TRUST.

Where partnership notes, together with the individual mortgage of one partner securing the same, are executed and delivered by a member of the partnership to the vice president of a bank to secure a partnership loan, and the entire transaction on its face appears to be a *bona fide* loan from the vice president on his individual account, but it is afterwards shown that the vice president secured the money he advanced from the bank on his individual note by depositing the partnership notes as collateral security for its payment; that he had never before made individual loans on real estate security; that the interest on his note to the bank was not paid by him, but that he expected and intended the interest from the partnership notes deposited as collateral security to be applied towards its payment; that the mortgaged property was afterwards bought by the bank for a less sum than the amount of the vice president's note to the bank and title thereto taken in the name of the vice president as trustee for the bank, the mortgage so executed and delivered to secure the partnership notes will, in such case, be adjudged to be an assignment in trust to the vice president as trustee for the benefit of the bank.

2. KNOWLEDGE OF ONE PARTNER NOT IMPUTED TO ANOTHER, WHEN.

Where a nonactive member of a partnership executes a mortgage upon his individual property to secure the payment of partnership notes executed by him and his partner who has the active management of the firm business, such mortgage will not be treated as an assignment in trust to a trustee in contemplation of insolvency with intent to prefer one or more creditors under Sec. 6343 Rev. Stat., simply because the active partner had knowledge at the time of the pressing demands of the firm creditors, the threatened cancellation of certain contracts, and the fact that he had also resorted to certain devices to conciliate creditor and postpone payment of their demands, when it does not appear that the nonactive partner who gave the mortgage had knowledge of the firm's financial status.

APPEAL from the court of common pleas.

John C. Healy and Malcolm McAvoy, for plaintiffs.

Stephens, Lincoln & Stephens, for defendants.

## GIFFEN, J.

The plaintiffs seek to have a mortgage, executed and delivered by the defendant, J. W. Cotteral, to the defendant, Joseph Rawson, declared an assignment in trust to a trustee, made in contemplation of insolvency with the intent to prefer one or more creditors, under Sec. 6343 Rev. Stat., as in force on January 6, 1896.

In December, 1895, the defendant, The First National Bank, held

Goodman v. Rawson.

seven promissory notes executed and delivered by J. W. Cotteral and J. W. Cotteral, Jr., and payable to the order of J. W. Cotteral & Company, a firm composed of J. W. Cotteral and junior, amounting to $27,-500. At that time the firm had a contract for the erection of a school house in Detroit, Michigan, at a cost of nearly $200,000. The work was not progressing according to the terms of the contract, the estimates were delayed, and when obtained were less than anticipated, material needed first in construction was not delivered, while that which could not then be used was on the ground, with the vendors demanding payment. Thereupon J. W. Cotteral, Jr., applied to the First National Bank for an additional loan of $12,000, which the officials of the bank agreed to secure for him. A mortgage on the real estate of J. W. Cotteral, Sr., was offered as security for the old debt and the present loan, making in all the sum of $39,500.

Afterwards the defendant, Joseph Rawson, who was vice president of the bank, agreed to make the loan, and on January 6, 1896, a mortgage was executed and delivered to him by J. W. Cotteral upon all his real estate to secure ten notes amounting to $39,500, executed by J. W. Cotteral and J. W. Cotteral, Jr., and payable to the order of J. W. Cotteral & Co.; and at the same time Joseph Rawson executed and delivered to the bank his promissory note for $39,500 and gave the notes of the Cotterals for the same amount as collateral security, and from the proceeds thereof gave a check to the bank for $27,500, for which he received the seven Cotteral notes, which were surrendered to the Cotterals, and caused a check for $12,000 to be credited to the account of J. W. Cotteral & Co. in the bank. It is claimed that this loan was, as appears on the face of the transaction, made by Mr. Rawson on his individual account; but he admits that he had never before loaned money upon real estate security, that he never paid the bank any interest on his note, saying that he expected the interest collected from the Cotterals on the collateral note to pay it; that a part of the property was bought by the bank at a consideration less than the amount of the note of Mr. Rawson, and that the title was taken by Rawson as trustee for the bank. Although the original transaction had the form of a *bona fide* loan from Mr. Rawson to J. W. Cotteral, the subsequent acts of the parties continuously discredit it, until the final act of purchasing the property in the name of Mr. Rawson as trustee reveals the true situation of the parties. We are impelled therefore to hold that the mortgage was an assignment in trust to a trustee.

But we find, however, that it was not made in contemplation of insolvency with the intent to prefer one or more creditors. The facts

relied on by plaintiffs to prove that it was so made are the financial con-
dition of the firm of J. W. Cotteral & Co. at the time, the pressing de-
mands of creditors during a few months just prior, the devices resorted
to by J. W. Cotteral, Jr., to conciliate the creditors and postpone pay-
ment, and the threatened cancellation by the school board of the Detroit
contract, of all which matters J. W. Cotteral had little, if any, knowledge,
as he was practically out of the partnership for a year prior to its as-
signment.  Counsel for plaintiffs admit this, but say that J. W. Cotteral,
Jr., knew them and that therefore the senior member was bound to
know.  It is true that he would be bound by the action of J. W. Cotteral,
Jr., as a member of the firm or as his agent; but the inquiry here is what
did the mortgagor contemplate and intend at the time he executed the
mortgage? What was the state of his mind, and how did the facts
relied on influence him?  It is clear that if not brought to his attention
they could in nowise have influenced his mind or fixed his purpose in
the execution of the mortgage.

It appears from the evidence that J. W. Cotteral, Jr., negotiated the
loan, and at his request the note and mortgage was signed by J. W.
Cotteral.

We hold therefore that the mortgage was not made in contempla-
tion of insolvency with the intent to prefer one or more creditors, and
there will be a decree for the defendants.